An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-619

Filed 17 June 2026

Hertford County, Nos. 23CR000135-450, 23CR228495-450, 23CR228487-450, 23CR000134-450

STATE OF NORTH CAROLINA

v.

MARTY BRYAN ROBERSON, Defendant.


Appeal by Defendant from judgments entered 30 January 2024 by Judge William D. Wolfe in Hertford County Superior Court. Heard in the Court of Appeals 29 January 2026.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Amanda J. Reeder, for the State.*
>
> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Candace Washington, for Defendant–Appellant.*


MURRY, Judge.

Marty B. Roberson (Defendant) appeals from judgments entered upon guilty verdicts for four counts of sexual battery, four counts of indecent liberties with a child, and two counts of second-degree kidnapping. Defendant claims that the trial court erred by failing to declare a mistrial *ex mero motu* after the State's expert witness

impermissibly vouched for the victim's credibility. Defendant further claims that his counsel's failure to object to the testimony and move for mistrial amounts to ineffective assistance of counsel (IAC). For the reasons below, this Court holds that the trial court did not prejudicially err by declining to declare a mistrial *ex mero motu* and that Defendant did not receive IAC.

## I.    Background

On 27 February 2023, a grand jury indicted Defendant for communicating threats, four counts of sexual battery, four counts of indecent liberties with a child, four counts of statutory sexual offense with a person fifteen years of age or younger, and four counts of first-degree kidnapping.[1] The matter came on for trial on 2 January 2024.

At trial, the State's evidence tended to show that the then-thirteen-year-old victim visited her grandmother's home, where her aunt also lived, "almost every day." Defendant would also visit the home often because he had a romantic relationship with the victim's aunt. In May 2022, Defendant grabbed the victim and pushed her against the couch in her grandmother's house, holding her down as he touched her breasts under her shirt. A few weeks later, Defendant pushed the victim against the kitchen sink and touched her breasts and genitals under her clothes, stopping only

---

[1]    The trial court granted Defendant's pre-trial motion to dismiss as to the charges for communicating threats, statutory sexual offense with a person fifteen years of age or younger, and first-degree kidnapping. All other charges proceeded to trial.

when the victim's aunt entered the house. The victim did not tell anyone about either incident because she was "scared" and Defendant threatened to hurt her family members if she told them.

In July 2022, Defendant again touched the victim's breasts on the couch in her grandmother's home, kissing her face and neck as she told him to "get off of" her. When the victim's aunt approached from outside, Defendant released the victim. Defendant again touched the victim's breasts under her shirt in November 2022 while she was sitting in her grandmother's living room, pushing her down onto a chair when she attempted to leave. Finally, in December 2022, while the victim was getting food in the kitchen, Defendant knocked her plate over, grabbed her, and pushed her against the sink to face him. Then, he forced her to touch his genitals, digitally penetrated her, and rubbed her breasts, stopping only when a family member came in from outside to use the bathroom.

Following this incident, the victim sent a text message to her cousin stating that Defendant "tried to rape" her when no one else was around, which the trial court admitted into evidence. In February 2023, during a panic attack in which her mother "kept asking . . . what was wrong," the victim finally told her mother that Defendant had inappropriately touched her. The next morning, the victim's father took her to the Hertford County Sheriff's office, where a sheriff interviewed her as part of a sexual-assault investigation. At trial, the State played body-camera footage of that interview to the jury, and the sheriff testified to believing the victim due to her

"emotions" and the level of detail in her recollection. Defendant did not object to either the body-camera footage or to the sheriff's testimony.

Following the interview, nurse practitioner Kendall Maready conducted a child-abuse medical evaluation on the victim, which yielded no physical signs of injury. However, the medical report from that evaluation found that the victim "exhibited changes in mood and behavior including anxiety, depressed mood, and a previous suicide attempt which she directly related to being touched inappropriately by [Defendant]." At trial, Nurse Maready testified regarding a perpetrator's grooming process of a child sexual-abuse victim and the common occurrence of delayed disclosure in these cases. In response to the State's question about the medical report's diagnosis, Nurse Maready replied, "We have confirmed child sexual abuse and confirmed—," before the trial court interrupted her mid-sentence and instructed the jury to "disregard that answer." Outside the jury's hearing, the trial court instructed the State's attorney to redact from the medical report the "entire block about diagnoses, both physical and mental," and to "make copies" for the jurors' consideration "so that it's less obvious" that the diagnostic section "has been whited out."

Defendant testified in his own defense and denied touching the victim inappropriately at any time. At the charge conference, the trial court denied the State's requested jury instruction on the admissibility of Nurse Maready's opinion testimony "only for the limited purpose of corroborating the victim's testimony."

Following jury deliberations that afternoon and the following morning, the jury returned a verdict finding Defendant guilty of four counts of sexual battery, four counts of taking indecent liberties with a child, and two counts of second-degree kidnapping. At sentencing, the trial court found Defendant to be a prior record level III and sentenced him to 73–144 months' imprisonment. Defendant timely appealed.

## II. Jurisdiction

This Court has jurisdiction over Defendant's appeal from the trial court's final judgment under N.C.G.S. §§ 7A-27, 15A-1444. *See* N.C.G.S. § 7A-27(b) (2025) (final judgment of a trial court); *id.* § 15A-1444(a) (pleaded not guilty but found guilty). IAC claims generally "should be considered through motions for appropriate relief and not on direct appeal." *State v. Stroud*, 147 N.C. App. 549, 553 (2001). But because "the cold record reveals that no further investigation is required," this Court also has jurisdiction to determine Defendant's IAC claim on direct review. *State v. Fair*, 354 N.C. 131, 166 (2001).

## III. Analysis

Defendant argues that (1) the trial court erred by failing to declare a mistrial *ex mero motu* when Nurse Maready impermissibly vouched for the victim's credibility, and (2) he received IAC due to his counsel's failure to object to the testimony and move for mistrial. For the following reasons, we hold that the trial court did not prejudicially err by failing to declare a mistrial *ex mero motu* and that Defendant did not receive IAC.

### A. Nurse Maready's Testimony

First, Defendant argues that the trial court erred by failing to declare a mistrial *ex mero motu* when Nurse Maready's testimony impermissibly vouched for the victim's credibility. A trial court "may declare a mistrial at any time during the trial" and "must declare a mistrial upon the defendant's motion if . . . an error" at trial "result[s] in substantial and irreparable prejudice to the defendant's case." N.C.G.S. § 15A-1061 (2025). Because the assessment of "whether substantial and irreparable prejudice has occurred lies within the sound discretion" of the trial court, we do "not . . . disturb[ ]" its decision "absent a[n] . . . abuse of [that] discretion." *State v. Thomas*, 350 N.C. 315, 341 (1999).

At the outset, we note that Defendant did not object at trial to the introduction of the challenged testimony, which ordinarily would fail to preserve the issue for review. *See* N.C. R. App. P. 10(a)(1). But "[a] party does not fail to preserve an issue for appellate review . . . where the trial court acts on its own motion without prior notice and thereby denies the party the opportunity to object." *In re R.S.H.*, 383 N.C. 334, 338 (2022). Here, the trial transcript reflects that the trial court interrupted the testifying witness mid-sentence and immediately instructed the jury to "disregard that answer." Because the trial court acted immediately and "on its own motion" to issue a curative instruction to the jury, and Defendant lacked "the opportunity to object," this issue is preserved for review.

To merit a mistrial, a movant must show two things: "(1) the evidence provided

at trial was prejudicial[,] *and* (2) the prejudicial evidence could not be cured by a curative instruction." *State v. Crisp*, 297 N.C. App. 400, 410 (2024). An error is prejudicial when "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C.G.S. § 15A-1443(a). To determine whether an instruction sufficiently cures any prejudice, we consider "the nature of the evidence and its probable influence upon the minds of the jury in reaching a verdict." *State v. Strickland*, 229 N.C. 201, 207 (1948). Our courts regularly "presume[ ] that jurors . . . understand[ ] and comply[ ] with instructions" given to them by the trial court. *Crisp*, 297 N.C. App. at 411. Thus, a trial court "ordinarily cure[s]" the admission of incompetent evidence by "withdraw[ing it] . . . and instruct[ing] the jury not to consider it." *Id.* In this circumstance, a mistrial is "appropriate only when . . . such serious improprieties . . . would make . . . a fair and impartial verdict under the law" "impossible" from that point forward. *State v. Black*, 328 N.C. 191, 200 (1991).

Our Rules of Evidence permit expert opinion testimony of "scientific, technical or other specialized knowledge [that] will assist the trier of fact to understand the evidence or determine a fact in issue." N.C. R. Evid. 702(a). In child-sexual-abuse cases, our Supreme Court has allowed expert opinion testimony regarding the characteristics of sexually abused children and whether a particular child exhibits similar characteristics. *See State v. Stancil*, 355 N.C. 266, 267 (2002) (allowing expert testimony on "profiles of sexually abused children" and victim's similar symptoms);

- 7 -

*State v. Kennedy*, 320 N.C. 20, 32 (1987) (allowing expert testimony on "behavior patterns of sexually abused children" to help jury assess victim's credibility). And when the State introduces "physical evidence consistent with sexual abuse," then a medical expert may "render an opinion . . . that sexual abuse has in fact occurred" under Rule 702. *State v. Dixon*, 150 N.C. App. 46, 52 (2002). But "in the absence of physical evidence to support a diagnosis of sexual abuse, expert testimony that sexual abuse has in fact occurred is not admissible because it is an impermissible opinion regarding the victim's credibility." *Id.*

Here, the medical report concludes that the victim's medical examination "does not show signs of injury" but notes that the absence "is not unusual given the type of contact described" and the time that had elapsed. Despite the lack of physical evidence, the State questioned Nurse Maready concerning the diagnosis in the medical report, to which she replied, "We have confirmed child sexual abuse—," before the trial court interrupted her and instructed the jury to disregard her answer. Because the State presented no physical evidence of sexual abuse, Nurse Maready's testimony diagnosing sexual abuse was impermissible. Thus, we must next determine whether this impermissible testimony prejudiced Defendant's case. *See* N.C.G.S. § 15A-1061.

Defendant argues that Nurse Maready's impermissible opinion testimony "vouched for . . . [the victim's] credibility and resolved a central issue for the jury," thus preventing a "fair and impartial verdict." In support, Defendant cites to *State v.*

*Couser*, 163 N.C. App. 727 (2002), in which this Court held that impermissible medical opinion testimony of a "probable sexual abuse" diagnosis likely impacted the jury verdict where the "central issue" was the victim's credibility and the victim's testimony was "the only direct evidence implicating [the] defendant." *Id.* at 730–31. There, the evidence consisted of testimony by the victim and others who had spoken with her, a medical evaluation finding inconclusive abrasions on her body, and the defendant's negative results from a rape-suspect kit. *Id.* at 730. Because the evidence against the defendant was not so "overwhelming" that the trial court could conclude that the testimony did not prejudice the jury, *see Stancil*, 355 N.C. at 267, the trial court remanded the case for a new trial, *Couser*, 163 N.C. App. at 734.

Unlike in *Stancil*, the State presented extensive and "overwhelming" evidence of the charged offenses here. *Stancil*, 355 N.C. at 267. The victim testified to multiple instances between May and December 2022 of Defendant touching her inappropriately, holding her down to touch her breasts and genitals, and digitally penetrating her, as well as the panic attacks she experienced following these incidents. The victim's cousin and mother corroborated this testimony, and the trial court admitted into evidence the victim's text message to her cousin that Defendant "tried to rape" her when no one else was around. The sheriff who conducted the sexual assault investigation testified—without objection—to interviewing the victim and

believing her due to her emotional state and the level of detail in her recollection.[2] The trial court also played his body-camera footage for the jury. Finally, the trial court permitted the jury to consider the nondiagnostic portion of the medical report, which found that the victim "exhibited changes in mood and behavior including anxiety, depressed mood, and a previous suicide attempt which she directly related to being touched inappropriately by [Defendant]." This abundant evidence of Defendant's guilt renders it improbable that the challenged testimony caused him "substantial and irreparable prejudice." *Thomas*, 350 N.C. at 341.

Further, the trial court immediately issued a curative instruction upon hearing Nurse Maready's impermissible opinion testimony and took additional steps on its own initiative to prevent any prejudicial effect. After instructing the jury to "disregard" the testimony, the trial court conferenced with counsel for both sides outside the jury's hearing and instructed the State's attorney to redact the "entire block about diagnoses, both physical and mental" from the medical report. After the State's attorney redacted this section, the trial court instructed her to "make copies" for the jurors' consideration "so that it's less obvious that [it] has been whited out." At the charge conference, the trial court also chose not to draw attention in the jury instructions to the improper testimony by denying the State's requested instruction on its admissibility "only for the limited purpose of corroborating the victim's

---

[2]  On appeal, Defendant does not challenge this testimony as improper.

testimony." Because the trial court cured any error by giving the curative instruction, no prejudice resulted to Defendant. Accordingly, we hold that the trial court soundly exercised its discretion in not declaring a mistrial and thus did not prejudicially err.

## B. Ineffective Assistance of Counsel

Defendant also argues that he received IAC due to his trial counsel's failure to object to the impermissible opinion testimony and move for mistrial. A defendant bringing an IAC claim must show both that (1) "defense counsel's performance was deficient" and that (2) "the deficient performance prejudiced the defense." *State v. Braswell*, 312 N.C. 553, 562 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To the first prong, the defendant must "show[ ] that counsel made error so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Establishing prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial"; in other words, that there was "a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *Id.* at 562–63.

As discussed above, the trial court interrupted Nurse Maready mid-sentence and immediately, on its own motion, issued a curative instruction to the jury. As a result, defense counsel lacked "the opportunity to object" to the impermissible testimony, *In re R.S.H.*, 383 N.C. at 338, and his performance was not deficient for this reason. Furthermore, the State presented abundant evidence for the jury to find Defendant guilty of the charged offenses absent the challenged testimony. Even

assuming *arguendo* that defense counsel's failure to move for mistrial constituted error, there was no "reasonable probability" of a different jury verdict that would render any such error prejudicial to Defendant. *Id.* at 563. Thus, we reject Defendant's argument and dismiss his IAC claim.

## IV.    Conclusion

For the reasons above, this Court holds the trial court did not prejudicially err by declining to declare a mistrial *ex mero motu* and dismisses Defendant's IAC claim.

NO PREJUDICIAL ERROR; DISMISSED.

Judges COLLINS and FLOOD concur.

Report per Rule 30(e).